914 F.2d 256
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Josephine EASON, Plaintiff,
Lafe Tolliver, Appellant, Cross-Appellee,
v.
EASTMAN & SMITH, Defendant-Appellee, Cross-Appellant.
 Nos. 89-3795, 89-3847.
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Attorney Lafe Tolliver appeals the award of Rule 11 sanctions against him for bringing an "utterly baseless" race discrimination lawsuit against a Toledo law firm on behalf of Josephine Eason, a black secretary. The firm, Eastman & Smith, cross-appeals on the amount of the award. We hold that the district court acted within its discretion both in the imposition of sanctions and in the determination of the amount of those sanctions. Therefore, we affirm.
 
 
 2
 * Josephine Eason is a black woman who worked as a legal secretary for the Toledo law firm of Eastman & Smith from March 10, 1988 to August 19, 1988. After starting as a temporary employee, Eason began full-time work at the firm on April 19, 1988. She was placed on the firm's standard 90-day probation period. Several evaluations of her work were performed during that period. At the end of 90 days, the probation period was extended another 30 days, to allow Eason time to improve certain of her secretarial skills. At the end of the 30 days, Eason was fired for failure to produce satisfactory work.
 
 
 3
 Eason retained attorney Lafayette (Lafe) Tolliver, who sent Eastman & Smith a letter on August 23, 1988, stating that a race discrimination lawsuit would be filed against the firm "unless of course we can agree to a quiet and speedy settlement." Tolliver suggested $75,000. Eastman & Smith responded with a letter of September 2, stating that it had conducted an investigation of charges that Eason had filed earlier with the Ohio Civil Rights Commission and had found them "totally unfounded." The letter also suggested that Tolliver "examine your responsibilities as a lawyer as described in Disciplinary Rule 7-102 of the Code of Professional Responsibility" and that he "review Rule 11(a) [sic] of the Federal Rules of Civil Procedure." The letter promised that if the suit were filed, Eastman & Smith would pursue Rule 11 sanctions. Tolliver responded with a letter stating: "your threats of sanctions you can take and stuff it [sic] in your left nostril."
 
 
 4
 On September 9, 1988, Eason brought suit under 42 U.S.C. Sec. 1981 charging a race-related discharge. The complaint alleged that Eason had been treated differently than similarly situated white employees. Eastman & Smith retained attorney Rolf Scheidel, a member of another firm, to represent them. The district court granted Eastman & Smith's motion for summary judgment on the ground that Eason had not established a prima facie case of discrimination. Eastman & Smith then moved to recover expenses and attorney fees under Rule 11.
 
 
 5
 On June 22, 1989, the district court ordered plaintiff's attorney (Tolliver) to pay counsel for Eastman & Smith (Scheidel) reasonable attorney fees and expenses and ordered Eastman & Smith to submit an affidavit and other information detailing the amount of attorney fees sought. Scheidel submitted affidavits and attorney billing statements showing attorney fees and expenses totaling $11,245.45. This total included not only Scheidel's attorney time, but also the attorney time (and expenses) of four members of the Eastman & Smith firm (two attorneys and two "law clerks").
 
 
 6
 In an order of July 31, 1989, the district court limited the award to $3,275.00 attorney fees and $839.65 expenses. It rejected any recovery for the attorney time expended by the Eastman & Smith attorneys and clerks, on the theory that if the firm had been a commercial concern, instead of a partnership of lawyers, the time spent by its officers and employees in defending against a discrimination action could not be counted as recoverable attorney fees. The court accepted Scheidel's valuation of his time at $100 per hour, but found his claimed expenditure of 65.5 hours to be excessive, in view of the uncomplicated facts of the case and the superficiality of the plaintiff's claim. Taking into consideration the "need to avoid casting a chill upon the enthusiasm of members of the bar for accepting civil rights cases," the court reduced the number of reasonable hours to 32.75 and awarded attorney fees in the amount of $3,275 and expenses in the amount of $839.65.
 
 II
 A. Adequate notice of appeal
 
 7
 As a threshold matter, Eastman & Smith asserts that this court lacks jurisdiction in this case to review the granting of Rule 11 sanctions, but may only review the amount of those sanctions. Tolliver's notice of appeal stated that it was an appeal "from the order of this court date [sic] July 31, 1989 wherein said district court granted per Rule 11 attorney fees and court costs in the total amount of $4114.65 against the Appellant." The July 31 order only established the amount that would be awarded under Rule 11. Eastman & Smith's entitlement to reasonable attorney fees and expenses had been established earlier, in the order of June 22, 1989. Appellee's position is that the notice of appeal only appeals the finding as to the amount of sanctions.
 
 
 8
 We disagree, and hold that both the amount and the propriety of Rule 11 sanctions are issues before this court on appeal. Fed.R.App.P. 3(c) states that: "The notice of appeal ... shall designate the judgment, order or part thereof appealed from...." The rule is tempered in practice by a policy of liberal construction of notices of appeal where the intent to appeal an unmentioned ruling is apparent and there is no prejudice to the adverse party. Simpson v. Norwesco, Inc., 583 F.2d 1007, 1009 n. 2 (8th Cir.1978); Kicklighter v. Nails by Jannee, Inc., 616 F.2d 734, 738-39 n. 1 (5th Cir.1980); Hammond v. Public Finance Corp., 568 F.2d 1362 (5th Cir.1978). Moreover, where claims or issues are inextricably entwined, each may be reviewed even though not all are referred to in the notice of appeal. Marshall v. Kirkland, 602 F.2d 1282, 1302 n. 17 (8th Cir.1979); Comfort Trane Air Conditioning v. Trane Co., 592 F.2d 1373, 1390 n. 15 (11th Cir.1984).
 
 
 9
 Another factor favoring Tolliver's position on this issue is the fact that the June 22 order explicitly contemplated a later ruling on the amount of sanctions. The order stated:
 
 
 10
 It is therefore ... further ordered that defendant submit an affidavit and other information detailing the amount of attorney's fees sought within two weeks from the date of receipt of this order.
 
 
 11
 Where the June 22 order explicitly mandated a submission of facts that would be necessarily ruled upon in a later order, we conclude that it is proper to construe an appeal from that later order as an appeal of the substantive findings in the earlier order as well.
 
 B. The award of Rule 11 sanctions
 
 12
 The Supreme Court has ruled that the standard of review for all aspects of a district court's award of Rule 11 sanctions is the abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., 110 S.Ct. 2447, 2461 (1990). Abuses of discretion include the district court's basing a decision "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Ibid. This standard comports with the previous rule in this circuit. Century Products v. Sutter, 837 F.2d 247, 250 (6th Cir.1988).
 
 
 13
 The district court concluded that attorney Tolliver had "failed to make a reasonable inquiry into the factual basis for the plaintiff's claims." (Joint App. at 123) It found that he had filed the lawsuit 17 days after interviewing his client and after only 10 hours of research. It noted that Tolliver had relied solely on his client for the facts when time permitted a fuller investigation, that he made no effort to review the files of the opposing party or its employees before filing the action, and that he did little to obtain facts that supported his client's claim of race discrimination. In particular, the district court noted that although the complaint purported to state a claim of discrimination on the basis of disparate treatment, Tolliver had failed to ask his client about the status or job of Ms. Judy Krupp, one of the employees who was alleged to have been treated more favorably than Ms. Eason. Had he done so, he would have discovered that Ms. Krupp and Ms. Eason were not similarly situated, as Krupp was neither a secretary, nor on probation.[1]
 
 
 14
 Appellant claims that he did attempt to conduct an investigation into Eason's claims. He states that he took depositions and filed several requests for discovery. The record shows that he served interrogatories and requests for production of documents, that he moved the court to compel the production of financial documents, and that he took the deposition of James Diegel, the administrator of Eastman & Smith. However, all these investigatory actions were taken after the complaint was filed. They say nothing about appellant's efforts to determine that the complaint itself was well grounded in fact, as Rule 11 requires. Further, appellant points to nothing in those discovery items that would indicate a causal relationship between his client's race and her dismissal.
 
 
 15
 Tolliver claims that it was reasonable for him to forego further factual inquiry after Eastman & Smith's September 2, 1988 letter, in which the firm stated its position that any race discrimination claim was unfounded and included the results of an internal investigation that was conducted as a result of Eason's earlier filing of a discrimination charge with the Ohio Civil Rights Commission. On that point, appellant is wrong. Even if we accept appellant's account of Eastman & Smith's resistance to requests for information, an attorney may not proceed with a lawsuit until he has established that it is "well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. A lawsuit is not a substitute for a "reasonable inquiry," even where an opponent is recalcitrant.
 
 
 16
 We hold that the district court did not abuse its discretion in awarding Rule 11 sanctions against Tolliver.
 
 
 17
 C. Cross-Appeal: Denial of fees for lawyer-clients
 
 
 18
 Eastman & Smith cross appeals on the district court's denial of attorney fees for the legal work performed by members of the client law firm.[2] Review of a district judge's choice of sanction under Rule 11 is also governed by the abuse of discretion standard. Cooter, 110 S.Ct. at 2461. Eastman & Smith argues that the district court erred in ruling, as a matter of law, that the fees and expenses incurred by the attorneys of Eastman & Smith should be excluded from the calculation of Rule 11 sanctions. We interpret this as an argument that the district court abused its discretion by refusing even to consider the affidavits and time sheets prepared by Eastman & Smith attorneys John Landwehr and Thomas Gibney in the calculation of the Rule 11 award.
 
 
 19
 The materials prepared by Landwehr and Gibney are detailed and appear to have been conscientiously organized. Further, the district court appears to have dismissed them summarily, without finding that the materials themselves were in any way defective. Therefore, Eastman & Smith appears to be correct in characterizing the district court's action as an summary rejection of the affidavits as a basis upon which to calculate sanctions.
 
 
 20
 Whether that rejection was an abuse of discretion is a different matter. This court has not addressed the precise question before. Essentially, Eastman & Smith is asking this court to establish a rule that legal work performed by lawyer-clients may not be automatically excluded by district judges from the calculation of Rule 11 sanctions. We decline to do so.
 
 
 21
 The precedents offered by Eastman & Smith touch only tangentially on the issue. They show that courts have held that the award of attorney fees under Rule 11 does not depend on the obligation of the party to pay an attorney. Chu by Chu v. Griffith, 771 F.2d 79, 81 (4th Cir.1985) (award of Rule 11 sanctions to attorney general who represented judge); In re Usoskin, 61 B.R. 869 (E.D.N.Y.1981) (debtor's attorneys acting with nominal or no remuneration entitled to sanctions under Rule 11 and bankruptcy rules where unsuccessful creditor acted vexatiously and in bad faith). Those cases differ from this one in an important respect; they did not involve clients, who also happen to be lawyers, seeking attorney fees. The cases cited by Eastman & Smith do not present a convincing rationale for removing from the district court's discretion the decision whether to consider the work of a lawyer-client in the calculation of Rule 11 sanctions.
 
 
 22
 Moreover, the policy grounds underlying the award of attorney fees under other statutory sections are different from those in the Rule 11 context. While the award of attorney fees under other statutory sections, such as 42 U.S.C. Sec. 1988, the Equal Access to Justice Act, or the Freedom of Information Act, is usually governed by such specific considerations as relieving the legitimate costs of bringing an action or encouraging the seeking of legal advice, the award of attorney fees under Rule 11 is essentially deterrent in nature, and thus, inherently more discretionary. Stewart v. American Intern. Oil & Gas Co., 845 F.2d 196 (9th Cir.1988) (award of less than full attorney fees under Rule 11 sufficient to deter plaintiff from further abuses); Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co., Inc., 112 F.R.D. 355 (S.D.N.Y.1986) (Rule 11 attorney fee sanction has deterrent, rather than compensatory, function).[3] Therefore, cases dealing with the question of awarding attorney fees to pro se lawyer litigants under other statutory provisions are of limited relevance to the question of awarding fees for lawyer-clients under Rule 11. See, e.g. Falcone v. Internal Revenue Service, 714 F.2d 646 (6th Cir.1983), cert. denied, 466 U.S. 908 (1984) (prevailing pro se attorney-plaintiff not entitled to attorney fees under Freedom of Information Act); Duncan v. Poythress, 777 F.2d 1508, 1515 (11th Cir.1985), cert. denied, 475 U.S. 1129 (1986) (prevailing pro se attorney-plaintiff entitled to attorney fees under 42 U.S.C. Sec. 1988); Martin v. Heckler, 773 F.2d 1145, 1152 (11th Cir.1985) (prevailing plaintiff entitled to attorney fees under 42 U.S.C. Sec. 1988, even though counsel agreed to represent him without charge); Cornella v. Schweiker, 728 F.2d 978, 986-87 (8th Cir.1984) (attorney fees awarded under Equal Access to Justice Act, even though claimant was represented without charge); Ceglia v. Schweiker, 566 F.Supp. 118, 123 (E.D.N.Y.1983) (award of attorney fees under Equal Access to Justice Act despite pro bono nature of representation).
 
 III
 
 23
 For the foregoing reasons, we AFFIRM the decision of the district court in all respects.
 
 
 
 [1]
 As to the other employee who was alleged to have received more favorable treatment than Eason, Barbara Feitz, the court noted that although Eason and Feitz were similarly situated, Eason had failed to present any evidence that the dismissal was causally linked to race. The district court employed the test for establishing a prima facie case of race discrimination as it was described in Cooper v. City of North Olmsted, 795 F.2d 1265, 1270 (6th Cir.1986) (necessary to show 1) membership in a racial minority, 2) dissimilar treatment from a similarly situated white employee, and 3) existence of sufficient evidence from which the court could find a causal connection between race and the employer's actions). Appellant urges a somewhat different test for establishing a prima facie case of discrimination: evidence that 1) the plaintiff is in a protected class, 2) the plaintiff is capable of performing the job, and 3) the plaintiff was discharged. We hold that the district court did not abuse its discretion in relying on the test expressed in Cooper
 
 
 [2]
 The firm does not appeal the district court's reduction in hours for Scheidel's work
 
 
 [3]
 Even where a court has recognized a compensatory function in the award of Rule 11 attorney fees, it balanced that function against the goals of deterrence and punishment, holding that "reasonable attorney fees" does not necessarily mean actual expenses. Thomas v. Capital Sec. Services, Inc., 836 F.2d 866 (5th Cir.1988)